No. 26-1897

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Petitioner-Appellee*,

v.

THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,

*Respondent-Appellant,*

AMERICAN ACADEMY FOR JEWISH RESEARCH; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; UPENN CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; JEWISH LAW STUDENTS ASSOCIATION OF THE UNIVERSITY OF PENNSYLVANIA CAREY LAW SCHOOL; and PENN ASSOCIATION OF SENIOR AND EMERITUS FACULTY,

*Intervenors-Appellants*

_____

On Appeal from the United States District Court for the Eastern
District of Pennsylvania, No. 25-cv-06502
Before the Honorable Gerald J. Pappert

_____

## INTERVENORS-APPELLANTS' SUGGESTION OF MOOTNESS AND MOTION TO VACATE THE DISTRICT COURT'S MARCH 31, 2026, DECISION AND ORDER

_____

This case arises from the Equal Employment Opportunity Commission's

("EEOC") investigation of alleged unlawful discrimination against Jewish

employees in violation of Title VII of the 1964 Civil Rights Act by the University

of Pennsylvania (the "University"). The EEOC served a subpoena on the University

seeking the names and personal contact information for members of all Jewish-identified organization on campus; employees in the Jewish Studies program; and participants in confidential listening sessions and anonymous surveys about antisemitism. The University refused to comply and the EEOC brought an action against the University in District Court seeking enforcement.

The American Academy for Jewish Research, the American Association of University Professors, the Penn Chapter of the American Association of University Professors, the Jewish Law Students Association of the University of Pennsylvania Carey Law School, and the Penn Association of Senior and Emeritus Faculty (collectively, "Intervenors-Appellants") are faculty and student organizations whose members' personal information is at issue in the subpoena, and who objected to the collection and provision of that personal information to the federal government. On February 3, 2026, the District Court granted their motion to intervene in this case as of right under Federal Rule of Civil Procedure 24(a), *see* District Court ECF No. 38. The Intervenors fully participated as defendants in briefing and at oral argument on the EEOC's Motion to Show Cause, arguing centrally that the enforcement of the subpoena would violate their constitutional rights to freely associate and practice their religion. On March 31, 2026, the Court granted the EEOC's application to enforce the subpoena and ordered the University to comply with the subpoena by May 1, 2026. District Court ECF No. 55. The Intervenors filed a timely notice of

appeal, as did the University, and the District Court subsequently stayed its ruling pending appeal, *see* District Court ECF No. 68.

Now, during the pendency of these appeals, the EEOC and the University of Pennsylvania—*but not the Intervenors*—have reached a settlement that, in its words, "moots the [University's] appeal." *See* Court of Appeals No. 26-1853, Dkt. 18-2. It also moots Intervenors' appeal, because the EEOC warrants in the settlement agreement that it will not "take any further measures" to enforce the subpoena during the pendency of its current investigation (thus granting the relief that Intervenors sought through litigation).

The Intervenors remain vulnerable, however, to future violations of their constitutional rights if the District Court's opinion remains in place. The settlement between EEOC and the University ensures only that the EEOC will not enforce the subpoena *during the pendency of the administrative investigation*. Nothing in the settlement precludes the EEOC from seeking precisely the same or similar information in discovery if it concludes the investigation by filing suit against the University. Further, nothing in the agreement prevents the EEOC from making similar demands and serving similar subpoenas on other universities or entities at which the two national Intervenor organizations have members.[1]

---

[1] Specifically, both Intervenors AAUP and AAJR have a nationwide membership that includes faculty and researchers affiliated with other Universities.

This settlement between the other parties to the litigation has deprived Intervenors of their opportunity to litigate these constitutional issues on appeal through no fault of their own. The appropriate remedy is therefore vacatur of the District Court's opinion. *See United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950) (noting that when a civil case becomes moot on appeal pending appellate adjudication, "[t]he established practice . . . in the federal system . . . is to reverse or vacate the judgment below and remand with a direction to dismiss."). Absent vacatur, Intervenors may well suffer downstream consequences from the District Court's opinion, including through principles of estoppel and issue preclusion, factors courts have routinely considered in concluding that equity counsels in favor of vacating a district court's opinion.

Indeed, this is the paradigmatic case for *Munsingwear* vacatur: when the losing party has been stymied in its ability to challenge the District Court's ruling on direct appeal by mootness resulting from the "vagaries of circumstance" unattributable to the party seeking vacatur, that party "ought not in fairness be forced to acquiesce in the judgment." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*, 513 U.S. 18, 25 (1994); *see also Lightner ex rel. N.L.R.B. v. 1621 Route 22 W. Operating Co., LLC*, 729 F.3d 235, 237 (3d Cir. 2013) ("This equitable rule prevents 'a judgment, unreviewable because of mootness, from spawning any legal consequences.'") (quoting *Rendell v. Rumsfeld*, 484 F.3d 236, 243 (3d Cir. 2007)).

This Court accordingly should vacate the judgment below and remand with instructions for the District Court to dismiss this action.  *See also Arizonans for Off. Eng. v. Arizona*, 520 U.S. 43, 71 (1997) ("Vacatur 'clears the path for future relitigation' by eliminating a judgment the loser was stopped from opposing on direct review.") (quoting *Munsingwear*, 340 U.S. at 40).

## BACKGROUND

On December 8, 2023, then-EEOC Commissioner (now Chair) Andrea Lucas issued a charge alleging that the University had subjected Jewish employees to a hostile work environment based on national origin, religion, and/or race.  On July 23, 2025, the EEOC issued an administrative subpoena seeking a broad range of information from the University, including—as relevant here—a list of school groups and organizations "related to the Jewish religion" and detailed personal information about their members.  *See U.S. Equal Emp. Opportunity Comm'n v. Trs. of Univ. of Pennsylvania*, 827 F. Supp. 3d 554, 563 (E.D. Pa. 2026) ("*EEOC v. Penn*").

Specifically, the subpoena sought: (1) the private contact information (personal phone number, personal email address, and home mailing address) of the employee members in each Jewish-related organization on campus; (2) the private contact information of employees in Penn's Jewish Studies Program; (3) the private contact information of employees who (with an assurance of confidentiality)

4

participated in Penn's March 2024 listening sessions on antisemitism; and (4) the private contact information of employees who received an (anonymous) Penn survey on antisemitism. *Id.* at 565. While the University produced nearly 900 pages of materials to the EEOC, it declined to furnish those four categories of material. In November 2025, the EEOC brought suit in the U.S. District Court for the Eastern District of Pennsylvania to enforce its subpoena.

The American Academy for Jewish Research, the American Association of University Professors, the Penn Chapter of the American Association of University Professors, the Jewish Law Students Association of the University of Pennsylvania Carey Law School, and the Penn Association of Senior and Emeritus Faculty (collectively, "Intervenors-Appellants") are faculty and student organizations whose members' personal information is at issue in the subpoena, and who objected to the provision of that personal information to the federal government. On January 13, 2026, these organizations filed a Motion to Intervene as Defendants in the lawsuit as of right under Federal Rule of Civil Procedure 24(a), or, in the alternative, for permissive intervention under Rule 24(b). *See* District Court ECF No. 14-1. Proposed Intervenors submitted sworn declarations describing concrete fears of harassment, doxxing, retaliation, and threats, and the chilling of their First Amendment rights. *See* Proposed Intervenors' Opp. at 2–7, District Court ECF No. 21. EEOC opposed that intervention motion, *see* District Court ECF No. 28. On

February 3, 2026, the Court granted Intervenors' motion to intervene in the action, finding, *inter alia*, that Intervenors had demonstrated that "the University's representation of their interests may be inadequate," District Court ECF No. 37 at 5, because the Intervenors' objected to the subpoena on other legal grounds than those raised by the University. *Id.* Intervenors, granted intervention as of right, thus participated in briefing and at oral argument on the EEOC's Motion to Show Cause on equal footing with other parties to the litigation. *See generally* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1920 ("the intervenor is entitled to litigate fully on the merits once intervention has been granted").

On March 31, 2026, the Court granted the EEOC's application to enforce the subpoena and ordered Penn to comply with the subpoena by May 1, 2026. *See* District Court ECF No. 55. The Court's order modified Request No. 2 of the subpoena by excluding information that would "reveal any employee's affiliation with a specific Jewish-related organization" and "information regarding MEOR, Penn Hillel and the Chabad Lubavitch House." *Id*.

Both the University and Intervenors filed timely notices of appeal and motions in District Court to stay the court's order pending appeal. *See* District Court ECF Nos. 56 and 57 (University); Nos. 60 and 61 (Intervenors); *see generally* Wright & Miller, 7C Fed. Prac. & Proc. Civ. § 1923 ("One who has been allowed to intervene in an action may appeal from subsequent orders in the action"); *Stringfellow v.*

*Concerned Neighbors in Action*, 480 U.S. 370, 375–76 (1987) ("An intervenor, whether by right or by permission, normally has the right to appeal an adverse final judgment by a trial court."). On April 27, 2026, the District Court granted the University's Motion to Stay and denied the Intervenors' separate motion to stay as moot. *See* District Court ECF Nos. 67 and 68. Two separate appeals were docketed in this Court: Number 26-1897 (Intervenors) and Number 26-1853 (the University).

While these appeals were pending, but before this Court issued a briefing schedule, the University and the EEOC reached a settlement, and the University stipulated to voluntary dismissal of its appeal. The Settlement provided, in relevant part:

> The EEOC warrants that it will not take any further measures to enforce the subpoena seeking identification and personal contact information of employees of the University of Pennsylvania, and any other unproduced information sought under the subpoena that gave rise to this action, nor will it seek to enforce the district court order regarding that subpoena or otherwise seek from the University of Pennsylvania any material sought by the subpoena, during the pendency of the EEOC's administrative investigation into Charge No. 530-2024-01963, issued on December 8, 2023.

*See* Court of Appeals No. 26-1853, Dkt. 18-2 (July 23, 2026). The University also stipulated in the settlement that the "parties' agreement moots the appeal," and that "it will not seek vacatur of the district court opinion in this case." *Id.* On July 23, 2026, in connection with filing the settlement agreement with the Court, the University filed a Notice of Voluntary

Dismissal Pursuant to Fed. R. App. P. 42(b), which this Court entered on July 24, 2026.

The Intervenors are not a party to this settlement. The University and EEOC entered their own settlement, leaving undisturbed the separate appeal between Intervenors and EEOC. This Motion to Vacate follows.

**ARGUMENT**

**A. The Penn-EEOC Settlement Has Mooted Intervenors' Appeal.**

As an initial matter, the Penn-EEOC settlement plainly has mooted the Intervenors' appeal. The entire dispute in District Court centered on whether the EEOC could enforce the administrative subpoena issued to the University in connection with Charge No. 530-2024-01963. The District Court held that the Commission could enforce the subpoena and required Penn to respond to the subpoena, rejecting the University's and Intervenors' constitutional and other arguments that the subpoena was invalid or unenforceable. *See EEOC v. Penn*, 827 F. Supp. 3d at 563 ("The Court grants accordingly the EEOC's application for enforcement and orders Penn to respond to the subpoena."). Recognizing the weighty legal issues that this case presented, the District Court later stayed this ruling pending appeals to this Court. *See* District Court ECF No. 67 at 2 (finding that "[s]taying the Court's order . . . will allow the Third Circuit Court of Appeals to address in an orderly manner a matter of great public interest.").

8

Because the EEOC, through a settlement agreement with the University, has agreed not to enforce the very subpoena at issue in the litigation, Intervenors and their members can no longer allege cognizable injury from the enforcement of the subpoena, which renders the case moot for Article III purposes. Courts have generally found that the voluntary withdrawal of a subpoena moots any challenge to those subpoenas, including pending motions to quash. *See, e.g.*, *Hardee v. United States*, 2007 WL 3037308, at *1 (W.D.N.C. Oct. 16, 2007) ("Since the subpoenas have been withdrawn, and the Court is satisfied that the withdrawal of the subpoenas have completely eradicated any effect of the alleged violation in the motion to quash, the Defendant's Motion to Dismiss is hereby GRANTED and the Petitioner's Motion to Quash is MOOT"); *In re AmFin Fin. Corp.*, 503 B.R. 1, 2 (Bankr. D.D.C. 2014) ("The withdrawal of the subpoena rendered the motion to quash moot."); *McCrea v. John Hopkins Univs.*, 2016 WL 4013639, at *1 n.1 (D. Md. July 27, 2016) (denying the plaintiff's motion to quash subpoena as moot in light of the defendants' representation that the subpoena was withdrawn).

That same result follows here. Indeed, the parties to the settlement, including the EEOC, themselves stipulated that the dispute between the University and the EEOC is now moot. *See* Court of Appeals No. 26-1853, Dkt. 18-2 ("The stipulation will state that the parties' agreement moots the appeal."). And while Intervenors were granted intervention as of right, in part, because they sought to advance certain

9

legal arguments that are distinct from arguments made by the University, both groups of Defendants-Appellants alleged injury from the single subpoena at issue in this case and the EEOC's desire to enforce that subpoena. Because the EEOC has now stipulated in a settlement with the University that it will not enforce that subpoena, any legal arguments that Intervenors planned to make have now been mooted by this separate settlement and the EEOC's agreement not to enforce the underlying subpoena.

**B. *Munsingwear* Vacatur Is The Appropriate Remedy.**

This Court should follow the "established practice" in the federal system and vacate the District Court's opinion under *Munsingwear* and related cases. Intervenors were not a party to the settlement agreement that rendered this case moot and have been deprived of their right to appeal by the actions of others. *See Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 232 (3d Cir. 2021) (*Munsingwear* vacatur generally favored where mootness was caused by "happenstance," or "circumstances beyond the party's control."). Principles of equity likewise compel this same conclusion. *See Humphreys v. Drug Enf't Admin.*, 105 F.3d 112, 114 (3d Cir. 1996) (noting that *Munsingwear* requires a "consideration of the equities and the underlying reasons for mootness.").

The Court should order vacatur, for two overarching reasons.

*First,* the "established practice" in the federal courts is to vacate the decision below when the case becomes moot during the pendency of an appeal. *Munsingwear*, 340 U.S. at 39.

*Second,* principles of equity reinforce Intervenors' entitlement to vacatur to prevent the District Court's now-unreviewable decision from "spawning any legal consequences." *Rendell*, 484 F.3d at 243; *see also Constand v. Cosby*, 833 F.3d 405, 412 (3d Cir. 2016) (describing equitable origins of *Munsingwear* vacatur as a "concern for procedural fairness, namely that parties should not remain bound by a decision that the court of appeals cannot review because it has become moot."); *Humphreys*, 105 F.3d at 115 n. 2 ("regardless of the outcome of any envisioned further appeal, it is within equity to bind a party to a judgment that reflects appellate scrutiny and is no longer appealable as of right, but it may be inequitable to bind a party to a judgment that would have been so scrutinized but was not only through happenstance."). It is consistent with equity here to "wipe the slate clean," and eliminate the possibility of any adverse legal consequences. *See Munsingwear*, 340 U.S. at 40 (stating vacatur "clears the path . . . and eliminates a judgment, review of which was prevented through happenstance.").

Rather than unfairly saddling Intervenors with the risk of suffering *res judicata* or collateral estoppel effects stemming from the District Court's order in future disputes, vacatur "'clears the path for future relitigation' by eliminating a

11

judgment the loser was stopped from opposing on direct review." *Arizonans*, 520 U.S. at 71 (quoting *Munsingwear*, 340 U.S. at 40). By contrast, denying vacatur in this case would be inconsistent with equity because it would risk granting a windfall to the EEOC, which could invoke issue preclusion arguments to potentially estop Intervenors from contesting future discovery requests or subpoenas seeking similar materials on Penn's campus or on other university campuses, *see* supra at 2 n. 1, after the EEOC insulated the District Court's favorable ruling from appellate review. *See Chicago Headline Club v. Noem,* 168 F.4th 1033, 1041 (7th Cir. 2026) (noting that "[i]n ordinary cases under *Munsingwear*, appellate courts worry about a winning party taking advantage of the preclusive effects of a judgment."); *cf. Sentinel Tr. Co. v. Universal Bonding Ins. Co.,* 316 F.3d 213, 221–22 (3d Cir. 2003) (noting that "a final judgment' includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be given preclusive effect") (quoting Restatement (Second) of Judgments, § 13)).

Here, that concern is real. For example, the EEOC could conclude its investigation by filing suit against the University under Title VII and then serve discovery requests seeking the same information sought in the investigative subpoena. If Intervenors again intervene in the action to protect their constitutional rights, the EEOC could argue that the Intervenors are precluded from doing so by the District Court's prior decision. In addition, the EEOC could open a similar

investigation of another university where the two national Intervenors, AAUP and AAJR, have members. If the EEOC served a similar investigative subpoena, the university refused to comply, the EEOC sought enforcement in court, and the national Intervenors intervened to protect the rights of their members, the EEOC could similarly argue that the national Intervenors are precluded from doing so by the District Court's prior decision. Those are precisely the types of unfair collateral effects that the "established practice" of vacating the moot decision is intended to prevent.

As a matter of law, Intervenors need not identify every precise fact pattern in which the District Court's judgment might have preclusive effect, *see Rendell,* 484 F.3d at 243 (noting that *Munsingwear* vacatur's equitable rule is to "wipe the slate clean and eliminate *the possibility of adverse legal consequence*s.") (emphasis added).  It is enough that, but for vacatur, Intervenors will have "been deprived of a review on the merits of the district court's adverse rulings." *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 94 F.3d 110, 111 (3d Cir. 1996).  The Court should follow the federal courts' "normal practice when mootness frustrates a party's right to appeal" and grant vacatur under *Munsingwear*.  *See Camreta v. Greene*, 563 U.S. 692, 698 (2011).

Finally, no exception to the "established practice" of vacating the moot decision applies here.  Specifically, the exception that *Munsingwear* vacatur may not

apply to certain appeals mooted by virtue of settlement, *see generally Bancorp*, 513 U.S. 18, is plainly inapplicable here because intervenors are not a party to the relevant settlement agreement. *See Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman,* 237 F.3d 186, 194 (3d Cir. 2001) (focus under *U.S. Bancorp* is whether "mootness results *from the voluntary action of the party seeking relief from the judgment below*") (emphasis added). In *Munsingwear* cases, "courts consider whether the action became moot due to the appealing party's own conduct or circumstances beyond the party's control," *Cnty. of Butler*, 8 F.4th at 232, and courts have routinely granted *Munsingwear* vacatur notwithstanding *U.S. Bancorp* where the party seeking vacatur, like Intervenors here, was not a party to the underlying settlement that mooted the action. *See McMurtry v. Aetna Life Ins. Co.,* 273 F. App'x 758, 760–61 (10th Cir. 2008) (granting intervenor's vacatur motion because "[i]n mooting the remaining claims on appeal, the settlement agreement [between the other parties] denied [the intervenor] the appeal that it seeks," which "is precisely the type of 'happenstance' that concerned the Court in *Munsingwear*."); *N. Cal. Power Agency v. Nuclear Regul. Comm'n*, 393 F.3d 223, 225-26 (D.C. Cir. 2004) (finding *Bancorp* inapplicable where entity seeking vacatur "was not a party to the settlement"); *Atlanta Gas Light Co. v. FERC*, 140 F.3d 1392, 1403 n.11 (11th Cir. 1998) ("*Bancorp* does not control this case because Atlanta Gas was not a party to the settlement.").

Two cases are directly on point with respect to the settlement issue. In *Old Bridge Owners Co-op. Corp. v. Twp. of Old Bridge,* 246 F.3d 310 (3d Cir. 2001), the Federal Deposit Insurance Corporation ("FDIC") foreclosed on a mortgage and sold the property to North County. *Id.* at 312. Property taxes and utilities had not been paid during the years the FDIC held an interest in the mortgage, and following the foreclosure sale North County brought a lawsuit in District Court against the township and the municipal utilities authority seeking to have the liens for the unpaid taxes and utilities declared void pursuant to 12 U.S.C. § 1825(b), which exempts FDIC property from certain taxes. *Id.* The FDIC later intervened, and the District Court ultimately held that § 1825(b) precluded the securing of any tax or utilities liens against the property, but found that the FDIC was personally liable for the back taxes. *Id.* North County and the FDIC both appealed to this Court. *Id.* at 313. While the appeal was pending, North County paid the taxes and utilities pursuant to a settlement agreement and then voluntarily withdrew its appeal. *Id.* at 313. The Third Circuit dismissed the appeal as moot, but granted vacatur, "conclud[ing] that the FDIC should not be penalized by allowing the District Court's ruling to stand when it is precluded, through no fault of its own, from having that decision reviewed on the merits." *Id.* at 314. Intervenors here are similarly situated to the FDIC in *Old Bridge*: they seek to appeal an adverse District Court judgment, but their appeal has become moot because of voluntary actions taken by a co-appellant.

15

More recently, in *American Association of University Professors v. Department of Justice*, 175 F.4th 413 (2d Cir. 2026), a group of employee-union Plaintiffs brought suit against the federal government to challenge its termination of approximately $400 million in funding to Columbia University (the university itself was not a party to the lawsuit). *Id.* at 415. The district court denied the unions' motion for a preliminary injunction and dismissed the case for lack of standing. After the unions appealed to the Second Circuit, the government entered into a settlement with Columbia under which "the Government agreed to restore the majority of the funding at the heart of this lawsuit." *Id.* at 416. Although the unions later dismissed their appeal, the Second Circuit found that the "Union Plaintiffs took this step because of the actions of others: Columbia and the Government entered into the Agreement," *id.* at 417, "thereby obtaining the 'primary relief' Union Plaintiffs sought, *i.e.,* the restoration of federal funding to Columbia." *Id.* The Second Circuit found that vacatur in this circumstance—where a settlement between an opposing party and a third-party mooted Appellant's claim while it was on appeal—was appropriate because the mootness resulted from "changed circumstances beyond [Union Plaintiffs'] control." *Id.*

In short, binding authority and the circumstances under which Intervenors' appeal rights have become moot clearly require vacatur.

## CONCLUSION

For the reasons stated above, Intervenors' appeal is now moot, and the Court should vacate the District Court's Opinion and Order of March 31, 2026, and remand to the District Court with instructions to dismiss.

Dated: August 4, 2026          Respectfully Submitted,

By: */s/ Witold J. Walczak*
Witold J. Walczak
Stephen Loney
Ariel Shapell
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
vwalczak@aclupa.org
sloney@aclupa.org
ashapell@aclupa.org

Mark A. Aronchick
Matthew A Hamermesh
Eitan G. Kagedan
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
maronchick@hangley.com
mhamermesh@hangley.com
ekagedan@hangley.com

Harold Craig Becker
Norman L. Eisen
DEMOCRACY DEFENDERS FUND

600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norm@democracydefenders.org
craig@democracydefenders.org

Amanda Shanor
3730 Walnut Street
Philadelphia, PA 19104
(203) 247-2195
shanor@upenn.edu

Seth Kreimer
3501 Sansom St.
Philadelphia, PA 19104
(215) 898-7447
skreimer@law.upenn.edu

*Counsel for the Intervenors-Appellants The National and University of Pennsylvania chapters of the American Association of University Professors, the Jewish Law Students Association of the University of Pennsylvania Carey Law School, Penn Association of Senior and Emeritus Faculty, and the American Academy for Jewish Research.*

18

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Fed. R. App. P. 27(d), I hereby certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this motion contains 3,895 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B) and 27(d)(1).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

August 4, 2026                                  /s/ *Witold J. Walczak*
                                                      Witold J. Walczak

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of August, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

Dated: August 4, 2026

/s/ *Witold J. Walczak*
Witold J. Walczak