No. 26-1897

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
Petitioner/Appellee,

v.

THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,
Respondent/Appellant,

and

AMERICAN ACADEMY FOR JEWISH RESEARCH, et al.,

Intervenors/Appellants.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
No. 2:25-cv-06502

# EEOC RESPONSE TO INTERVENORS-APPELLANTS' SUGGESTION OF MOOTNESS AND MOTION TO VACATE THE DISTRICT COURT'S MARCH 31, 2026, DECISION AND ORDER

Petitioner EEOC brought this case against the respondent, the University of Pennsylvania ("Penn"), to enforce an administrative subpoena it issued during its investigation into allegations of discriminatory harassment of Jewish employees on Penn's campus. That subpoena sought information to identify potential witnesses and victims—information that would help the EEOC determine if there was reason to

believe the alleged harassment occurred, and if Penn, as an employer, addressed the alleged harassment appropriately. After the district court allowed intervention and the parties presented their arguments, the district court issued a carefully reasoned opinion rejecting Penn's and the Intervenors' arguments against enforcing the subpoena. It held that the underlying charge was valid, the subpoena requested relevant evidence, and the Intervenors (and Penn) had not carried their burden on any defense.

Penn and the Intervenors appealed to this Court. As the EEOC investigation continues, Penn and the EEOC have reached a mutually acceptable compromise that ended their dispute over the underlying subpoena. The agreement explains that the EEOC will not take any additional measures to enforce the administrative subpoena or the district court judgment. The EEOC further agreed that it will not ask for the information sought in the subpoena from Penn during the course of its administrative investigation.

The Intervenors now seek to vacate the underlying district court decision, but they fail to show their "equitable entitlement" to that "extraordinary remedy." *U.S. Bancorp Mortg. Co. v. Bonner Mall P'ship*,

513 U.S. 18, 26 (1994) ("*Bancorp*"). While courts considering vacatur typically look first to the cause of mootness, that does not absolve the Intervenors of their burden to show the need for vacatur. And, here, they have not carried that burden. The Intervenors have not demonstrated a risk of any future preclusive effect, while the public interest favors retaining the district court's well-considered opinion. The EEOC therefore respectfully requests that this Court reject the Intervenors' request to vacate the district court opinion.

## I. Background

The district court ably described the facts below. It noted that "[i]n the wake of Hamas's October 2023 terrorist attack on Israel, Penn students and employees experienced 'pernicious acts of antisemitism' on Penn's campus." R.54 at 4 (quoting then-University President Elizabeth Magill). The alleged acts included "hateful antisemitic messages, including swastikas," while "certain Penn employees received disturbing emails threatening violence because of their Jewish faith." *Id.*

EEOC Commissioner (now Chair) Andrea Lucas filed a charge of discrimination initiating an investigation of whether "Penn 'engaged in a pattern or practice of harassment based on national origin, religion, and/or

race against Jewish employees, in violation of Title VII." *Id.* at 5 (quoting Comm'r's Charge, R.1-4). As part of the statutorily required investigation that followed, the EEOC "issued an administrative subpoena to obtain from Penn contact information of potential employee victims or witnesses of antisemitic harassment." *Id.* The EEOC sought, among other things, contact information for Penn employees who reported antisemitic harassment, who participated in Penn-sponsored listening sessions on antisemitism, who received a survey from Penn on antisemitism, or who were affiliated with Jewish programs or organizations at Penn. *Id.* at 6.

Penn refused to provide this information, and the subpoena enforcement action underlying this appeal followed. R.54 at 2. The district court permitted the Intervenors to intervene as of right, noting that "[t]he subpoena seeks information about [their] members' affiliation with Jewish-related groups on the University's campus." R.37 at 4. It also found permissive intervention appropriate. *Id.* at 6.

After extensive briefing and a three-and-a-half hour hearing, the court granted the EEOC's motion to enforce the subpoena. R.54 & 55. The court acknowledged the concerns Penn and the Intervenors raised, and it observed that the EEOC, in addressing those concerns, had agreed to seek

contact information without reference to any particular organizational affiliation. R.54 at 7.

The court explained the role of a charge in the EEOC's administrative process, noting that a subpoena is one of the EEOC's tools for determining if there is reasonable cause to believe discrimination occurred. *See id.* at 3-4. It held that the charge "fairly allege[d] Penn failed to provide Jewish faculty, staff and other employees a work environment free from religious harassment," which informed Penn that the EEOC was investigating a possible hostile work environment under Title VII. *Id.* at 8. And it examined and rejected each of Penn's objections to the EEOC's administrative subpoena. *Id.* at 8-17.

In the same order, the district court thoroughly analyzed the Intervenors' concerns. Over the course of more than fourteen pages, the district court assessed—and ultimately rejected—the objections that the Intervenors raised. *Id.* at 17-32. The court took pains to focus on the law and the facts, rather than what it characterized as the Intervenors' inflammatory language. To this end, the court referenced the Intervenors' use of "unfortunate and inappropriate" analogies to the Holocaust, *id.* at 2, their "counterproductive" arguments "comparing the EEOC's investigation

into antisemitism at Penn with Nazi Germany," *id.* at 20, and other assertions that the district court described as "unserious political arguments, not serious legal ones which, as [Intervenors'] counsel admitted, undercut her position." *Id.* at 23.

Throughout its opinion, the district court focused on the fact that the subpoena is part of an administrative investigation under Title VII. So, for example, in rejecting assertions of privacy, the court relied on the confidentiality provisions that govern Title VII investigations. *See id.* at 21-22 (relying on 42 U.S.C. § 2000e-8(e) and noting criminal penalties that attach to unlawful disclosure); *id.* at 25-27 (in examining right-to-association defense, recognizing the EEOC's "important interest in investigating the charge of discrimination" and stating that no showing had been made of a reasonable probability that the information would become public).

The court's order then directed Penn to provide the information requested in the subpoena. R.55. Based on the EEOC's proposal, the court clarified that Penn need not "reveal any employee's affiliation with a specific Jewish-related organization[.]" *Id.*

Both Penn and the Intervenors appealed. R.56, 60. The Intervenors identified four issues they planned to raise. Dkt.10 at 2. All concerned the district court's analysis of the impact of this EEOC subpoena on the Intervenors and the court's ultimate decision to enforce this subpoena. *Id.*

Penn and the EEOC filed a stipulation of dismissal of Penn's appeal. Dkt.18, *EEOC v. Trustees of Univ. of Penn.*, No. 26-1853 (3d Cir. July 23, 2026) ("Stipulation"). As part of that resolution, the EEOC agreed it will not take any further measures to enforce the subpoena and will not seek the information sought in the subpoena from Penn during the course of its administrative investigation of the Lucas charge. *Id.* at Ex.A. The EEOC also agreed not to seek to enforce the district court order regarding that subpoena. *Id*. This Court then dismissed Penn's appeal. Dkt.19, *EEOC v. Trustees of Univ. of Penn.*, No. 26-1853 (3d Cir. July 24, 2026).

## II. Argument

The EEOC does not dispute that this appeal is moot. The district court granted intervention below because, among other things, Penn would need to "disclose information about the proposed intervenors' members' affiliation with Jewish-related University groups" if the subpoena were enforced. R.37 at 5. Adopting the EEOC's proposed

modification, the district court subsequently held that Penn need not provide "any employee's affiliation with a specific Jewish-related organization." R.55. Then Penn, the object of the subpoena, and the EEOC, which issued it, entered their Stipulation resolving this case. To the extent the Intervenors had a live interest in their appeal, the EEOC agrees that it is now moot.

Mootness, however, does not mandate vacatur. Intervenors rely extensively on *United States v. Munsingwear*, a Supreme Court case referring to the "established practice" of vacating the civil judgment below when a case has become moot while appeal is pending. 340 U.S. 36, 39 (1950). But "*Munsingwear* does not set forth a categorical rule." *Khodara Env't, Inc. ex rel. Eagle Env't L.P. v. Beckman*, 237 F.3d 186, 194 (3d Cir. 2001). "[V]acatur is an equitable remedy rather than an automatic right." *Id.* Indeed, in *Bancorp*, the Supreme Court stated that *Munsingwear*'s reference to "the 'established practice' for vacatur" was, in fact, "dictum," and that its practice "was not entirely uniform." 513 U.S. at 23 (citing multiple cases dismissed for mootness without vacatur). As a result, "*Munsingwear* should not be applied blindly, but only after a consideration of the equities and the

underlying reasons for mootness." *Humphreys v. Drug Enf't Admin.*, 105 F.3d 112, 114 (3d Cir. 1996).

The moving party thus bears the burden "to demonstrate . . . equitable entitlement to the extraordinary remedy of vacatur." *Bancorp*, 513 U.S. at 26. Intervenors have not done so here. While the Intervenors did not cause this appeal to be moot, they have not demonstrated the actual harm they face from the underlying decision absent vacatur, relying instead on speculation. Meanwhile, the public interest, which Intervenors do not reference, also cuts against vacatur. For both of these reasons, vacatur is unwarranted.

**A. The Intervenors' assertion of hypothetical preclusive effects does not warrant vacatur.**

As noted above, the touchstone of vacatur analysis is equity. *See Humphreys*, 105 F.3d at 114l; *see also Khodara*, 237 F.3d at 194-95 (also considering the public interest). Underlying the use of vacatur is the notion that a losing party should not be forced "to live with the precedential and preclusive effects of the adverse ruling without having had a chance to appeal it." *Fialka-Feldman v. Oakland Univ. Bd. of Trs.*, 639 F.3d 711, 716 (6th Cir. 2011) (citing *Bancorp*, 513 U.S. at 25); *see also Constand v. Cosby*,

833 F.3d 405, 412 (3d Cir. 2016) (explaining that vacatur arises "out of concern for procedural fairness, namely that parties should not remain bound by a decision that the court of appeals cannot review because it has become moot").

But these procedural fairness concerns are most pronounced where the underlying ruling actually has such "precedential and preclusive effects." *See Fialka-Feldman*, 639 F.3d at 716. The Intervenors' equity argument on this front is unpersuasive, as it focuses on attenuated "*res judicata* or collateral estoppel effects . . . in future disputes," Dkt.19 at 11, without showing any actual risk of preclusion moving forward.

The Intervenors' invocation of potential future preclusive effects ignores the narrow nature of EEOC subpoena enforcement proceedings. An EEOC investigation, including its use of its administrative subpoena power, is one part of "an integrated, multistep enforcement procedure." *Occidental Life Ins. Co. of Cal. v. EEOC*, 432 U.S. 355, 359 (1977); *EEOC v. Shell Oil Co.*, 466 U.S. 54, 62-63 (1984). When the EEOC must go to court to enforce an administrative subpoena, "[t]he decision . . . is a case-specific one that turns not on a neat set of legal rules, but instead on the application of broad standards to multifarious, fleeting, special, narrow facts that

utterly resist generalization." *McLane Co. v. EEOC*, 581 U.S. 72, 81 (2017) (citation modified).

The district court's opinion is thus restricted to the context of the underlying administrative subpoena here. Consistent with the procedurally distinct and fact-intensive nature of EEOC subpoena enforcement actions, the district court repeatedly assessed the Intervenors' concerns in light of the charge underlying the subpoena, the specifics of the subpoena itself, and the confidential nature of EEOC investigations. *See, e.g.*, R.54 at 21-22, 25-27. And the court's opinion focused on the evidentiary record before it in *this action*, highlighting that the Intervenors (and Penn) produced "no evidence" that enforcing the subpoena would create a risk of bodily harm, "no evidence" of a reasonable probability that disclosed information would become public, "no evidence" that any information that did become public would cause harm, no showing that employees were "likely to suffer any adverse effects from . . . disclosure," and "no evidence" that the EEOC would not maintain the confidentiality of information obtained in the investigation. *Id.* at 20-22 (citation modified).

The EEOC is unaware of a court giving preclusive effect to such a decision in any EEOC administrative subpoena enforcement action. Where

this Court and other courts have given preclusive effect to non-EEOC subpoenas in other contexts, the decisions typically involve multiple challenges to the same subpoena. *See, e.g.*, *Smith & Wesson Brands, Inc. v. Att'y Gen. of N.J.*, 105 F.4th 67, 70 (3d Cir. 2024); *In re Bestwall LLC*, 47 F.4th 233, 243 (3d Cir. 2022); *VDARE Found., Inc. v. James*, 162 F.4th 77, 80 (2d Cir. 2025). Here, of course, there is no risk of future litigation involving this subpoena. *See* Stipulation. The EEOC therefore does not foresee any situation in which the district court's opinion could have future preclusive effects.

The Intervenors do not contend with the specifics of the EEOC's investigative process or how it limits the possibility of any preclusive effect. They suggest preclusion may attach in a future EEOC merits lawsuit against Penn, but that hypothetical ignores the vastly different postures provided by administrative subpoena enforcement actions and EEOC merits litigation. The Intervenors' hypothetical assumes the EEOC will find reasonable cause to believe discrimination occurred, conciliation will fail, the EEOC will then decide to file a lawsuit, and, in that lawsuit, the EEOC would then seek the same information in discovery that it sought through

this administrative subpoena. *See* 42 U.S.C. § 2000e-5(b) & (f)(1) (setting out requirements for EEOC merits litigation).

Even if each of those eventualities came to pass and the EEOC sought information in discovery similar to that sought in the (now mooted) subpoena, the Intervenors do not suggest how that would meet any test for preclusion. In any such litigation, a discovery request would be based on the scope of the complaint in that case, tailored to the claims in that case, and subject to a more restrictive standard. *Compare EEOC v. Franklin & Marshall Coll.*, 775 F.2d 110, 115 (3d Cir. 1985) (holding that relevance for administrative subpoena "is not limited . . . to that which might be relevant at trial" but instead extends "to all that is relevant to the charge under investigation"), *with* Fed. R. Civ. P. 26(b)(1) (defining the scope of discovery in relation "to any party's claim or defense" and request's "proportional[ity] to the needs of the case").

The Intervenors' hypothetical about a future subpoena enforcement action similarly overstates any possible preclusive effect. The district court's decision is not precedent for the Eastern District of Pennsylvania or any other court. *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991). Furthermore, for the EEOC to file a subpoena

enforcement action against another university, there would need to be a charge under Title VII, the EEOC would need to decide to issue a subpoena based on the lack of voluntary cooperation, and, if the respondent objects to the subpoena, the EEOC would need to issue a determination, following administrative review, that those objections are meritless. *See* 42 U.S.C. §§ 2000e-8(a), 2000e-9; 29 C.F.R. § 1601.16. Even then, the subpoena would be focused on information relevant to the substance and scope of *that* charge—not the charge underlying the subpoena in this case.

Meanwhile, any assessment of a constitutional objection to a discovery request or a subpoena in some future litigation would necessarily turn on the claims in the lawsuit and the information requested—not any previous administrative subpoena. *See, e.g.*, *Ams. for Prosperity Found. v. Bonta*, 594 U.S. 595, 611-14, 617-18 (2021) (closely examining nature of information requested and government interest in obtaining it); *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 435-37 (2006) (describing case-by-case approach to application of Religious Freedom Restoration Act). Moreover, Title VII's strict confidentiality requirements for EEOC investigations do not apply to information obtained in merits litigation. *See* 42 U.S.C. § 2000e-8(e). Because

the district court opinion repeatedly emphasized the specific charge at issue, the scope of the subpoena, and Title VII's confidentiality provisions, it is difficult to see how the decision would have a preclusive effect in such radically different contexts.

Intervenors thus overstate the case for vacatur. They acknowledge that they are not at risk from the subpoena that gave rise to this appeal, Dkt.19 at 9, and this subpoena enforcement action is unequivocally at an end. "Thus, no harm could come to [the Intervenors] from leaving [the district court's] opinion on the books[.]" *Jewish War Veterans of the U.S., Inc. v. Mattis*, 266 F. Supp. 3d 248, 253 (D.D.C. 2017).

**B. The Intervenors fail to show the public interest favors vacatur.**

The Intervenors also do not address the public interest. The EEOC acknowledges that courts consider responsibility for mootness, but whether the public interest favors vacatur is also a core factor. *See Khodara*, 237 F.3d at 194-95; *Moore v. Thurston*, 928 F.3d 753, 758 (8th Cir. 2019); *Valero Terrestrial Corp. v. Paige*, 211 F.3d 112, 118 (4th Cir. 2000); *see also Bancorp*, 513 U.S. at 26 ("As always when federal courts contemplate equitable relief, our holding must also take account of the public interest."). Intervenors' silence is particularly notable because the public interest at

stake, by itself, can be enough to defeat vacatur. *See SD Voice v. Noem*, 987 F.3d 1186, 1190 (8th Cir. 2021) (without deciding whether moving party caused mootness, holding that "the public interest alone defeats vacatur"); *Moore*, 928 F.3d at 758 ("[E]ven if the [party seeking vacatur] is not at fault for the mootness here, the public interest weighs in favor of allowing the district court's judgment to stand."); *Teamsters Loc. Union No. 1199 v. Coca-Cola Consol., Inc.*, 854 F. App'x 675, 677–78 (6th Cir. 2021) ("[V]acatur is not justified when mootness is a result of settlement *or a court determines the judgment serves the public interest*." (emphasis added)); *see also Jewish War Veterans*, 266 F. Supp. 3d at 252 & n.4 (denying vacatur without resolving whether moving party made appeal moot).

Courts consider the public interest broadly. *Bancorp* stressed the significance of the underlying decision: "Judicial precedents are presumptively correct and valuable to the legal community as a whole. They are not merely the property of private litigants and should stand unless a court concludes that the public interest would be served by a vacatur." 513 U.S. at 26-27 (quoting *Izumi Seimitsu Kogyo Kabushiki Kaisha v. U.S. Philips Corp.*, 510 U.S. 27, 40 (1993) (Stevens, J., dissenting)).

While the Intervenors did not cause their appeal to become moot, they have not shown the public interest favors vacatur. *See id.*; *Moore*, 928 F.3d at 758. The district court carefully and dispassionately addressed the Intervenors' uncommon challenges to an EEOC administrative subpoena, setting aside Intervenors' allegations that "significantly raised this dispute's temperature." R.54 at 2. The court addressed every potential objection they asserted, in a manner that future courts may find persuasive in future, unrelated cases. *See Jewish War Veterans*, 266 F. Supp. 3d at 253 (explaining that the district court's opinion was "not binding on any court beyond its use in this case, and instead, is only valuable as persuasive authority"). Thus, the court's opinion serves the public interest by contributing to "a robust corpus of judicial precedent." *Khodara*, 237 F.3d at 194; *see also Jewish War Veterans*, 266 F. Supp. 3d at 253 (noting the "harm [that] would come to the legal community as a whole from vacatur" (citation modified)). And as noted above, the court's decision is unlikely to affect the Intervenors' legal rights. *See id.* at 254 (weighing public interest against "absence of harm" to the moving party).

Vacating the district court's opinion would not serve the public interest. Indeed, the Intervenors "offer no argument as to how vacatur here

serves the public interest, instead arguing only how vacatur serves them." *SD Voice*, 987 F.3d at 1191. Accordingly, the public interest here weighs strongly against vacatur.

## III. Conclusion

For all these reasons, the EEOC asks this Court to deny Intervenors' motion to vacate.

Respectfully submitted,

CATHERINE ESCHBACH
Acting General Counsel

CHRISTOPHER LAGE
Deputy General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

JEREMY D. HOROWITZ
Assistant General Counsel

s/James Driscoll-MacEachron
JAMES DRISCOLL-MACEACHRON
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
602-661-0014
james.driscoll-maceachron@eeoc.gov

August 14, 2026

## CERTIFICATE OF COMPLIANCE

This motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2)(A) because it contains 3,287 words.

This motion complies with the typeface and type-style requirements of Fed. R. App. P. 27(d)(1)(E), 32(a)(5), and 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

s/James Driscoll-MacEachron
James Driscoll-MacEachron
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
602-661-0014
james.driscoll-maceachron@eeoc.gov

August 14, 2026

## CERTIFICATE OF SERVICE

I certify that on 14th day of August, 2026, I electronically filed the foregoing motion in PDF format with the Clerk of Court via the appellate CM/ECF system. I certify that all counsel of record are registered CM/ECF users and will be served through the appellate CM/ECF system.

s/James Driscoll-MacEachron
James Driscoll-MacEachron
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
602-661-0014
james.driscoll-maceachron@eeoc.gov