**No. 26-1897**

**IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,
*Petitioner-Appellee*,

v.

THE TRUSTEES OF THE UNIVERSITY OF PENNSYLVANIA,
*Respondent-Appellant,*

AMERICAN ACADEMY FOR JEWISH RESEARCH; AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; UPENN CHAPTER OF THE AMERICAN ASSOCIATION OF UNIVERSITY PROFESSORS; JEWISH LAW STUDENTS ASSOCIATION OF THE UNIVERSITY OF PENNSYLVANIA CAREY LAW SCHOOL; and PENN ASSOCIATION OF SENIOR AND EMERITUS FACULTY,
*Intervenors-Appellants*

---

On Appeal from the United States District Court for the Eastern
District of Pennsylvania, No. 25-cv-06502
Before the Honorable Gerald J. Pappert

---

**INTERVENORS-APPELLANTS' REPLY IN SUPPORT OF
MOTION TO VACATE THE DISTRICT COURT'S MARCH 31, 2026
DECISION AND ORDER**

---

## **INTRODUCTION**

The Equal Employment Opportunity Commission ("EEOC") mooted Intervenors' appeal by settling with another party, but now resists the straightforward application of *United States v. Munsingwear, Inc.*, 340 U.S. 36 (1950), to vacate the underlying decision. The EEOC identifies no valid basis for leaving intact a decision that Intervenors have had no opportunity to appeal, and which could have preclusive effect against Intervenors in other litigation.

As Intervenors' opening Motion explained, this appeal concerns an administrative subpoena issued by the EEOC seeking the identifying and private contact information for Penn employees associated with Judaism: employees who belong to campus organizations "related to the Jewish religion, faith, [and] ancestry/National Origin"; employees affiliated with the Jewish Studies department; employees who (with an assurance of confidentiality) participated in listening sessions on antisemitism; and employees who participated anonymously in a Penn survey on antisemitism. Intervenors' members objected to the disclosure of their identities and private information on First Amendment and other constitutional grounds. The District Court enforced the subpoena but stayed its decision, and both the University and Intervenors appealed to this Court. The University and the EEOC thereafter settled, thus mooting both appeals. Because Intervenors are no longer able to obtain appellate review of the District Court's decision, and because they include

national organizations that are in active litigation opposite the government in other jurisdictions, they moved this Court to vacate that opinion pursuant to *Munsingwear*. *See* Dkt. 19.

The EEOC opposes vacatur, *see* Dkt. 22, presumably because it wishes to continue to rely on the District Court's decision in other litigation. But that is the very reason why that unreviewable opinion should now be vacated, and the EEOC's arguments to the contrary lack merit. *First*, EEOC invokes *U.S. Bancorp v. Bonner Mall*, 513 U.S. 18 (1994), to argue that Intervenors cannot demonstrate that vacatur would be equitable here. But *U.S. Bancorp* involved a circumstance where the party mooted its *own* appeal, and the Supreme Court specifically reaffirmed the longstanding principle, expressed in *Munsingwear*, that vacatur is appropriate when the party seeking vacatur was not a party to the mooting settlement—a principle this Court and others continue to recognize and enforce. *Second*, the EEOC characterizes the risk of preclusion effects as "overstated." But the EEOC does not represent that it will not *argue* that Intervenors are precluded from litigating similar constitutional objections in this or similar litigation, nor does it assert that such an argument would be meritless. In particular, the EEOC does not dispute that it could seek to preclude Intervenors from making the constitutional arguments that they made before the District Court were the agency to seek similar information in discovery. It is therefore undeniable that Intervenors risk preclusive or collateral estoppel effects if

the District Court's order stands, including in future civil discovery related to the EEOC's investigation in this case. *Third*, the EEOC argues that the public interest favors keeping the District Court's decision on the books because, in essence, the EEOC thinks the decision was correct and therefore usefully contributes to the corpus of judicial precedents. That argument is unavailing generally, but it is particularly inapt here because the District Court's constitutional analysis implicates an intervening Supreme Court decision touching on similar issues as those addressed by the district court—*First Choice Women's Res. Centers, Inc. v. Davenport*, 146 S. Ct. 1114 (2026). It would be inconsistent with the public interest to let the District Court's decision stand when this Court did not have the opportunity to review the decision with the benefit of this intervening Supreme Court precedent.

## ARGUMENT

The EEOC does not dispute that this case became moot on appeal through no fault of Intervenors, who are not party to the settlement agreement between the EEOC and the University. *See* Response at 7 ("the EEOC does not dispute that this appeal is moot); *id.* at 9 ("the Intervenors did not cause this appeal to be moot"). On its own terms, therefore, this case triggers the "[t]he established practice . . . in the federal system" that appellate courts "reverse or vacate the judgment below and remand with a direction to dismiss," *Munsingwear, Inc.*, 340 U.S. at 39, where mootness has been caused by "happenstance," or "circumstances beyond the party's

control." *Cnty. of Butler v. Governor of Pennsylvania*, 8 F.4th 226, 232 (3d Cir. 2021).

The EEOC nonetheless contends that Intervenors have not shown an equitable entitlement to vacatur and that the public interest does not justify it. Both arguments misread clear Supreme Court and Circuit precedent. The EEOC underestimates the potential impact of the District Court's decision, and misconstrues how courts considering a vacatur motion must assess the equities and the public interest.

## I. Equitable Considerations Favor Vacatur.

Intervenors have demonstrated equitable entitlement to vacatur to prevent the District Court's now-unreviewable decision from "spawning any legal consequences," *Rendell v. Rumsfeld*, 484 F.3d 236, 243 (3d Cir. 2007) (citation omitted), because they face ongoing effects of the District Court decision that they are now unable to appeal. *See Constand v. Cosby*, 833 F.3d 405, 412 (3d Cir. 2016) (describing equitable origins of *Munsingwear* vacatur as a "concern for procedural fairness, namely that parties should not remain bound by a decision that the court of appeals cannot review because it has become moot.").

### a. The EEOC's arguments flow from a fundamental misreading of *U.S. Bancorp v. Bonner Mall*, 513 U.S. 18 (1994)

In opposing vacatur, the EEOC suggests that *U.S. Bancorp* places its thumb firmly on the scale against vacatur, and that the decision casts *Munsingwear* to the side. That is incorrect—*U.S. Bancorp* reaffirmed *Munsingwear*, and announced an

exception to its rule for circumstances that do not apply here. In *U.S. Bancorp*, the party seeking vacatur stipulated to a reorganization plan that *mooted its own appeal*. The Supreme Court found that equity did not counsel in favor of vacatur because "the losing party" had "voluntarily forfeited his legal remedy by the ordinary processes of appeal or certiorari, thereby surrendering his claim to the equitable remedy of vacatur." *Id.* at 25. Justice Scalia's opinion for the Court stated unequivocally that the Court "stand[s] by *Munsingwear*'s dictum that mootness by happenstance provides sufficient reason to vacate." *Id.* at 25 n. 3. That is, while vacatur remains an "equitable remedy," *id.* at 25, *Munsingwear*'s "established practice" of vacatur remains the rule when, as here, the party seeking vacatur played no role in the circumstances leading to mootness. *Camreta v. Greene*, 563 U.S. 692, 698 (2011); *see also League of Women Voters of Fla. Inc. v. Fla. Sec'y of Stat*e, 66 F.4th 905, 949 (11th Cir. 2023) (Pryor, C.J.) ("the Supreme Court's decision in *Bancorp* did not alter the rule that vacatur is generally proper when the mootness resulted from" circumstances unattributable to the party seeking vacatur).

The EEOC overlooks the critical distinction in *U.S. Bancorp*, and thus offers no basis to apply it when the party seeking vacatur was *not* itself a party to the settlement that mooted the appeal. The EEOC likewise has no answer to the unbroken line of post-*U.S. Bancorp* appellate precedent, cited by Intervenors in their Motion, granting vacatur where the requesting party was not a party to the settlement

agreement that mooted its appeal. *See, e.g.*, *American Association of University Professors v. Department of Justice*, 175 F.4th 413, 417 (2d Cir. 2026) (granting vacatur where appeal became moot through settlement between defendants and a third party which effectively granted the plaintiffs the "primary relief" they sought because mootness resulted from "changed circumstances beyond [Union Plaintiffs'] control."); *N. Cal. Power Agency v. Nuclear Regul. Comm'n*, 393 F.3d 223, 225 (D.C. Cir. 2004) (finding *U.S. Bancorp* inapplicable where entity seeking vacatur "was not a party to the settlement"). As this Court explained in *Old Bridge Owners Co-op. Corp. v. Twp. of Old Bridge*, a non-settling party "should not be penalized by allowing the District Court's ruling to stand when it is precluded, through no fault of its own, from having that decision reviewed on the merits." 246 F.3d 310, 314 (3d Cir. 2001).

**b. The District Court's Decision Threatens Adverse Legal Consequences for Intervenors**

EEOC's equitable arguments also fail on their own terms. The EEOC "does not foresee any situation in which the district court's opinion could have future preclusive effects," Response at 12, but tellingly, the EEOC does not represent that it will not seek to preclude Intervenors and their members at Penn or other universities from making these same constitutional arguments in future disputes, including arising out of the current investigation. If the EEOC follows its investigation with a lawsuit against the University and seeks discovery of the

information it sought in the subpoena, the EEOC does not deny that it could invoke estoppel principles to preclude Intervenors from objecting to those discovery requests on the constitutional grounds asserted by Intervenors below.

The EEOC's reference to the "narrow nature of EEOC subpoena enforcement proceedings," Response at 10, and its assertion that civil discovery may vary in scope from administrative subpoena proceedings and may be subject to different procedural rules, *see* Response at 12-13, are entirely beside the point. Issue preclusion arguments flowing from the District Court opinion's conclusions could be used against Intervenors in a variety of contexts. To cite just one example, the District Court rejected the Intervenors' argument that disclosure of their members' association with Jewish organizations implicated their First Amendment rights, concluding, "[b]ecause information provided in response to the subpoena will not reveal any employee's affiliation with a specific organization, it does not impose a burden akin to the one imposed in the typical compelled-disclosure scenario." *EEOC v. Trs. of Univ. of Pennsylvania*, 827 F. Supp. 3d 554, 575 (E.D. Pa. 2026). If the EEOC or another party seeks to discover the identities of all individuals on any campus in the United States who are affiliated with Jewish organizations, Intervenors could face an assertion of issue preclusion if they argue that such discovery violates their First Amendment rights or those of their members.

Nor does the EEOC represent that it will not invoke issue preclusion in relation to any *future* administrative subpoena seeking similar information relating to Jewish organizations at Penn or on other university campuses at which Intervenors have members. Moreover, any such disavowal, even if made by the EEOC, would not bind the rest of the Executive Branch. For example, the Department of Justice is pursuing allegations of antisemitism against a number of universities at which the national Intervenors, the American Association of University Professors (AAUP) and the American Academy for Jewish Research (AAJR), have members. Intervenors also risk nonmutual collateral estoppel if private litigants seek to prevent these organizations from making similar constitutional arguments in response to discovery demands in pending or future Title VII lawsuits.

These serious legal risks to Intervenors are sufficient to warrant vacatur. There is no requirement that a party identify, in advance, precisely what preclusive effects a lower court's opinion might have—though Intervenors have done so here. Nor is there any requirement that a party seeking vacatur show that preclusion arguments would be meritorious, and here Intervenors do not concede that they would be. Instead, under Third Circuit law, *Munsingwear* vacatur is preferred to "wipe the slate clean" so as to eliminate "the *possibility* of adverse legal consequences." *Rendell*, 484 F.3d at 243 (emphasis added). That standard is met here.

The EEOC cites only one case to counter Intervenors' argument concerning the risk of preclusion, *Jewish War Veterans of the United States of Am., Inc. v. Mattis*, 266 F. Supp. 3d 248 (D.D.C. 2017), and it is inapposite. *Jewish War Veterans* concerned a discrete dispute arising out of a Latin Cross displayed on public land in California, a dispute that was mooted "by legislation from the U.S. Congress that transferred the land to a private party." *Jewish War Veterans*, 266 F. Supp. 3d at 253. The district court denied a motion to vacate its earlier opinion brought by members of Congress who had supported the Cross project and been subject to discovery, finding they had cited no risk of preclusion. *Id.* (holding that Congress had mooted the dispute, which was "plainly and completely over" and thus "[t]here can therefore be no more discovery in this or related litigation."). Because the members faced no risk of preclusion other than in the then-terminated litigation, the Court concluded, "the Representatives cannot be harmed by the preclusive effect of this Court's prior opinion, because there is none." *Id*.

Here, by contrast, the EEOC itself notes that the administrative subpoena is but one step in its investigation. *See* Response at 12-13. Intervenors' preclusion concerns do not arise from a single piece of litigation that is finally and conclusively terminated as in *Jewish Veterans*. Rather, they arise from an active and ongoing investigation by the EEOC. And the national Intervenors are at risk of suffering the preclusive effect of the District Court opinion in future administrative and judicial

actions brought by the EEOC, other federal agencies, state enforcement agencies, and private parties.

## II. The Public Interest Favors Vacatur

Finally, the EEOC seeks shelter in the public interest, Response at 15-17, invoking decisions where the lower court opinion was mooted by intervening legislation, not by settlement. No such consideration applies here, and the EEOC's suggestion that the public interest always favors leaving a lower court opinion intact simply blinks away *Munsingwear*. As other courts have observed, "if a general interest in providing guidance to the legal community always sufficed, the doctrine of *Munsingwear* vacatur would be all but a nullity." *League of Women Voters*, 66 F.4th at 951; *see also Am. Fam. Life Assur. Co. of Columbus v. F.C.C.*, 129 F.3d 625, 631 (D.C. Cir. 1997) ("The Court [in *U.S. Bancorp*] never suggested, nor have we, that the precedential value of a decision alone renders vacatur inappropriate. Such a rule would swallow *Munsingwear*."). Nor does it help the EEOC to argue that the lower court decision was correct—this Court has been deprived of the opportunity to reach that question, and in any case the Supreme Court has stressed that it is "inappropriate" to consider "assumptions about the merits" in moot cases when determining whether to vacate lower court opinions. *U.S. Bancorp*, 513 U.S. at 27.

The public interest moreover favors vacatur here because the Supreme Court's recent decision in *First Choice*, 146 S. Ct. 1114 (2026)—issued shortly after the District Court's ruling below—clarifies the First Amendment principles that apply. *First Choice* involved a government subpoena seeking, in the context of a state fraud investigation, the names, phone numbers, addresses, and places of employment of all individuals who had made donations to First Choice through two specific webpages. Justice Gorsuch, writing for the Court, found that the subpoena created an immediate and ongoing constitutional injury because when "a state authority" demands "private donor or member information"—even if only disclosed to the government—it "is enough to discourage reasonable individuals from associating with a group." *Id*. at 1123, 1130.

The intervening Supreme Court decision in *First Choice* diminishes the precedential and educational value of the District Court's opinion in relation to these important constitutional questions. It would therefore not serve the public interest to have Intervenors bear the risk of being estopped by a District Court ruling that this Court had no opportunity to review with the benefit of the Supreme Court's intervening decision in *First Choice*.

## CONCLUSION

For the reasons stated above and in Intervenors' Motion, this Court should vacate the District Court's Opinion and Order of March 31, 2026, and remand to the District Court with instructions to dismiss.

Dated: August 21, 2026

Respectfully Submitted,

By: */s/ Witold J. Walczak*
Witold J. Walczak
Stephen Loney
Ariel Shapell
AMERICAN CIVIL LIBERTIES UNION OF PENNSYLVANIA
P.O. Box 60173
Philadelphia, PA 19102
(215) 592-1513
vwalczak@aclupa.org
sloney@aclupa.org
ashapell@aclupa.org

Mark A. Aronchick
Matthew A Hamermesh
Eitan G. Kagedan
HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
One Logan Square, 27th Floor
Philadelphia, PA 19103-6933
(215) 568-6200
maronchick@hangley.com
mhamermesh@hangley.com
ekagedan@hangley.com

Harold Craig Becker
Norman L. Eisen
DEMOCRACY DEFENDERS FUND

600 Pennsylvania Ave., S.E., No. 15180
Washington, D.C. 20003
(202) 594-9958
norm@democracydefenders.org
craig@democracydefenders.org

Amanda Shanor
3730 Walnut Street
Philadelphia, PA 19104
(203) 247-2195
shanor@upenn.edu

Seth Kreimer
3501 Sansom St.
Philadelphia, PA 19104
(215) 898-7447
skreimer@law.upenn.edu

*Counsel for the Intervenors-Appellants The National and University of Pennsylvania chapters of the American Association of University Professors, the Jewish Law Students Association of the University of Pennsylvania Carey Law School, Penn Association of Senior and Emeritus Faculty, and the American Academy for Jewish Research.*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Fed. R. App. P. 27(d), I hereby certify that this motion complies with the type-volume limitation of Fed. R. App. P. 27(d)(2) because this motion contains 2,594 words, excluding the parts exempted by Fed. R. App. P. 27(a)(2)(B) and 27(d)(1).

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in Times New Roman 14-point font.

August 21, 2026

/s/ *Witold J. Walczak*
Witold J. Walczak

**CERTIFICATE OF SERVICE**

I hereby certify that on this twenty-first day of August, 2026, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Third Circuit using the appellate CM/ECF system. Counsel for all parties to the case are registered CM/ECF users and will be served by the appellate CM/ECF system.

August 21, 2026

/s/ *Witold J. Walczak*
Witold J. Walczak